Carol R. Brophy (SBN 155767)
*cbrophy@steptoe.com*
Dina Adham (SBN 203048)
*dadham@steptoe.com*
STEPTOE & JOHNSON LLP
Spear Tower
1 Market Street, 39th Floor
San Francisco, California 94105
Telephone: (415) 365-6700 /Facsimile: (415) 365-6699

Dennis E. Raglin (SBN 179261)
*draglin@steptoe.com*
STEPTOE & JOHNSON LLP
633 W. 5th Street, Suite 1900
Los Angeles, California 90071
Telephone: (213) 439-9400/Facsimile: (213) 439-9599

Attorneys For Defendant ENCHANTE ACCESSORIES, INC.

**SUPERIOR COURT OF STATE OF CALIFORNIA**

**FOR THE COUNTY OF ALAMEDA**

| | |
|---|---|
| CONSUMER ADVOCACY GROUP, INC., in the public interest,<br><br>Plaintiff,<br>vs.<br><br>ROSS STORES, INC. dba DD's DISCOUNTS, a Delaware corporation; et al.,<br><br>Defendants. | Case No. RG19034033<br><br>Assigned to Hon. Patrick R. McKinney, II, Dept. 15<br><br>**DEFENDANT ENCHANTE ACCESSORIES, INC.'S ANSWER TO FIRST AMENDED COMPLAINT** |

Pursuant to California Code of Civil Procedure Section 431.30, Defendant ENCHANTÉ ACCESSORIES, INC. ("Defendant") answers the unverified First Amended Complaint for Injunctive Relief ("FAC") filed by Plaintiff CONSUMER ADVOCACY GROUP, INC. ("Plaintiff" or "CAG") as follows:

## GENERAL DENIAL

1. Pursuant to California Code of Civil Procedure ("CCP") Section 431.30(d), Defendant generally and specifically denies all of the allegations of the FAC, and each cause of action, and each paragraph in each cause of action, and each and every part thereof, and further denies that Plaintiff is entitled to any relief or damages of any kind.

## FACTUAL ALLEGATIONS IN SUPPORT OF AFFIRMATIVE DEFENSES

### (Proposition 65)

2. Proposition 65 ("Prop 65") was adopted by voter initiative in November 1986. It is a chemical "right to know" law: it requires warnings at the level of detection but provides an affirmative defense if a defendant can prove that exposure to an enumerated chemical is below a safe harbor level.[1] Prop 65's scope is limited: 1) it does not mandate reformulation or set content limits; and 2) it only applies to two health effect endpoints, cancer and reproduce toxicity. Prop 65 allows *anyone* to enforce it,[2] and private enforcers keep 25% of any civil penalty and obtain attorneys' fees and costs.[3]

3. Today, approximately 950 chemicals, ranging from chemically synthesized compounds to substances produced by the human body and necessary for life, (e.g. testosterone, estrogen, and vitamin A) appear on the Prop 65 list maintained by OEHHA, which is responsible for promulgating implementing regulations.

4. Prop 65 contains a warning requirement, which is the basis for Plaintiff's claim. Its description defines the key elements of the prima facie case that a plaintiff must make:

> No person in the course of doing business shall knowingly and intentionally expose any individual to a chemical known to the state to cause cancer or

---

[1] Health & Saf. Code ("HSC") §§ 25249.6, 25249.10 (c).
[2] HSC § 25249.7 (d).
[3] HSC § 25249.12 (d) (civil penalties). Code of Civil Procedure ("CCP") § 1025.5 (fees/costs)

- 2 -
ANSWER TO FIRST AMENDED COMPLAINT

reproductive toxicity without first giving a clear and reasonable warning to such individual, except as provided in Section 25249.10.

5. There are important limitations on the warning requirement, which defendants may assert as optional affirmative defenses at trial. For reproductive toxicity, no warning is required if the exposure is at a level that would have "no observable effect assuming exposure at one thousand times the level in [the product]." HSC § 25249.10(c). A defendant can establish that its products meet this exception by showing that the exposure to the chemical is at a level that does not exceed the Safe Harbor levels established by OEHHA and set forth in the regulations. With respect to Di-2-ethylhexyl phthalate ("DEHP"),for cancer, 27 California Code of Regulations ("CCR") § 25705(b) establishes the "no significant risk level" ("NSRL") at 310 micrograms per day ("μg/day"). For reproductive toxicity, Section 25805(b) establishes the "maximum allowable dose level " ("MADL") at 410 μg/day.

**(Overview of CAG's Proposition 65 Private Enforcement of DEHP in low-cost items))**

6. Since 2007, CAG has issued *thousands* of Prop 65 notices of intent to sue for DEHP, and other phthalates in low cost items, such as plastic bags, consumer product packaging, plastic components of very low-priced consumer products. CAG has filed at least 121 complaints based on DEHP notices, most of which name as defendants the retailers rather than the manufacturers, and often include a myriad of products (as low as four and other involve 25 or more). Currently, CAG has four pending cases against Ross that involve Enchanté products. (Notice of Related Cases, filed April 19, 2022) These cases bear witness to CAG's *modus operandi*.

7. As illustrated by this case, after serving the complaint, CAG then pressures the retailer to force the manufacturer to settle with CAG, often in an *out of court settlement* with the manufacturer for a six-figure monetary payment with a dismissal of the litigation against the retailer. Co-defendant Perfect Image entered into a consent judgment dated June 17, 2021 related to Dual Compartment Clear Handbags, in which it agreed to pay $125,000. Co-defendant Naxa Electronics entered into a consent judgment in October 2020 related to Wireless Headphones and paid $75,000 to resolve the matter. Finally, co-defendant/retailer Ross Stores, Inc. agreed to pay $95,000 pursuant

to a consent judgment related to backpacks, wallets, and similar products. To date, a total of $295,000.

**(Di-2-ethylhexyl phthalate (DEHP))**

8. DEHP is the most frequently used phthalate, a plasticizer used in polymer products to make plastic flexible. DEHP is used widely, especially in medical devices, such as intravenous (IV) bags and tubing, umbilical artery catheters, blood bags and infusion tubing, enteral nutrition feeding bags, nasogastric tubes, and peritoneal dialysis bags, and is utilized in manufacturing a wide variety of consumer products, such as packed food and beverages, soft plastic products, such as packaging and storage products, building and furniture materials, including furniture upholstery, mattresses, wall coverings, floor tiles, and vinyl flooring, and cosmetics and personal care products to carry fragrances.

9. DEHP is state and federally approved (e.g. prior sanctioned) for use as a plasticizer in food packaging that contacts food with high water content. Prior sanctioned substances are those substances whose use in contact with food is the subject of a letter issued by the FDA or USDA before 1958 offering no objection to a specific use of a specific substance. The FDA has published in the indirect food additives a partial list of the prior sanctioned substances, including the prior sanction for DEHP at 21 CFR § 181.27.

10. DEHP is currently regulated by FDA for use as a food additive and is specifically authorized for use in multiple food-contact applications, including as a plasticizer in contact with high water content foods, as well as in the following food-contact applications and regulations: 21 CFR §§ 175.105 ("Adhesives"), 175.300 ("Resinous and polymeric coatings"), 175.380 ("Xylene-formaldehyde resins condensed with 4,4'-isopropylidenediphenol-epichlorohydrin epoxy resins"), 175.390 ("Zinc-silicon dioxide matrix coatings"), 176.170 ("Components of paper and paperboard in contact with aqueous and fatty foods"), 176.180 ("Components of paper and paperboard in contact with dry food"), 176.210 ("Defoaming agents used in the manufacture of paper and paperboard"), 177.1010 ("Acrylic and modified acrylic plastics, semirigid and rigid"), 177.1200 ("Cellophane"), 177.1210 ("Closures with sealing gaskets for food containers"), 177.1400 ("Hydroxyethyl cellulose film, water-insoluble"), and 178.3910 ("Surface lubricants used in the manufacture of metallic articles").

11. The Consumer Product Safety Improvement Act of 2008 (CPSIA) Section 108(a) was specifically designed to prohibit any children's toy or child care article that contains concentrations of more than 0.1 percent of certain phthalates, including di-(2-ethylhexyl) phthalate (DEHP). Specifically, the CPSIA content standard was designed to regulate phthalates in infant and young children's' items, such as **baby pacifiers** – intended for neonates to three-year olds to facilitate sleeping or feeding or to help the child in sucking or teething, thereby assuming continuous and prolonged exposure to phthalates.

12. Materials used in children's toys and child care articles subject to Section 108(a) of the CPSIA, and 16 CFR part 1307 must comply with the third party testing requirements of Section 14(a)(2) of the Consumer Product Safety Act, unless listed in Section 1308.2. 16 CFR 1307.3 – Prohibition of children's toys and child care articles containing specified phthalates.

13. **The products at issue in this case are not subject to CPSIA**. They are not subject to the phthalate restriction or limitation. Enchanté contends that Prop 65 settlements, including the three Consent Judgments entered unopposed in this case, that set a reformulation standard at the CPSIA 0.1 percent -"baby pacifier" standard results in provision of Prop 65 warning at levels that are so far below the states' safe harbor value (410 µg/day) as to pose no material risk of reproductive toxicity whatsoever. It is well established and even recognized by the US Supreme Court that provision of "warnings" where there is no material risk of harm, does not serve a valid state interest. *Nat'l Inst. of Family & Life Advocates v. Becerra* ("*NIFLA*") (2018) 138 S.Ct. 2361, 2372, 2377

**(DEHP Is Not a Human Carcinogen)**

14. DEHP was listed under California's Proposition 65 as a carcinogen in 1988. In 2004, the California Court of Appeal ruled in *Baxter v. Denton*, a declaratory judgment action, that DEHP was not a *human* carcinogen, although it was properly listed under Proposition 65 by the state based on animal studies. *Baxter Healthcare Corp. v Denton* (2004) 120 Cal.App.4th 333, 348. Thus, there is no legal basis on which Plaintiff can pursue a failure to warn lawsuit to compel a cancer warning for exposure to DEHP.

15. In 2003, the state listed DEHP as a reproductive toxicant, for developmental and male reproductive effects.

# AFFIRMATIVE DEFENSES

## FIRST AFFIRMATIVE DEFENSE

(Lack of Standing)

16. The FAC, and each of its purported causes of action, fails to constitute a cause of action against Defendant within the meaning of CCP Section 430.10.

## SECOND AFFIRMATIVE DEFENSE

(Statutory Exemption)

17. Pursuant to California Health and Safety Code Section 25249.10(c), Defendant alleges that any exposures as alleged in the FAC are exempt from the warning requirement of California Health and Safety Code Section 25249.6 because, based on evidence and standards of comparable scientific validity, as those which form the scientific basis for the listing pursuant to California Health and Safety Code § 25249.8(a) and California Code of Regulations, Title 27, Sections 25000 et seq., the alleged exposures pose no observable effect of reproductive harm and pose no significant risk of cancer.

## THIRD AFFIRMATIVE DEFENSE

(Res Judicata/Collateral Estoppel)

18. Defendant alleges that the FAC, and each claim for relief therein, is barred by the doctrines of res judicata and/or collateral estoppel. On information and belief Plaintiff, and/or private plaintiffs in privity with Plaintiff, have withdrawn notices of intent to sue and/or entered into settlements or consent judgments with other defendants whose terms provide that warnings are not required for the same or higher exposures in the accused products that Plaintiff alleges violate Proposition 65 in this case.

## FOURTH AFFIRMATIVE DEFENSE

(Commerce Clause Violation)

19. Defendant alleges that Plaintiff seeks to apply California Health and Safety Code Section 25249.6 in a manner that would pose an impermissible burden on interstate commerce under the United States Constitution.

20. Proposition 65 violates interstate commerce because it imposes a significant cost on manufacturers and distributors to evaluate products beyond the cost imposed by federal, international and other state laws. This cost is borne not solely by the citizens of California, but overwhelmingly by businesses and consumers in the rest of the world. Thus, Proposition 65 is a mechanism for shifting the costs and risks to out-of-state business and consumers while benefiting California and its consumers, who may understand Proposition 65 and may not be alarmed by the cryptic "warnings".

21. In addition, Proposition 65's regulatory requirement that sellers must post Proposition 65 warnings on their Internet websites prior to purchase by a consumer, greatly expands and exceeds the scope of the statute, which mandates warnings prior to *exposure*. The regulation requiring internet warnings prior to purchase is not only *ultra vires*, but results in a system of double warnings (by way of the Internet and on shipped products) which applies to companies selling on the Internet world-wide. The administrative costs are high and unduly burdensome for Defendant to monitor and manage. The warnings and requirements are confusing and misleading to Defendant, its suppliers, vendors, and distributors.

22. Moreover, Proposition 65 imposes inappropriate burdens on interstate commerce and has the practical effect of regulating conduct (including manufacturing) that occurs wholly outside of California. Defendant operates in multiple states, and the products at issue may be manufactured out-of-state, but placed in interstate commerce in accordance with federal and state laws in effect in the state of origin. Moreover, many products are imported to the United States and governed by international standards and treaties to which the United States and sovereign nations are bound, but to which California is not a party and has no standing or right to challenge or enforce. Proposition 65 imposes litigation risk if companies fail to place misleading cancer and/or reproductive toxicity warnings on their products for California sales where such products contain any detectable level of a Proposition 65 listed chemical. (See Cal. Health and Safety Code § 25249.6.)

23. Further, Proposition 65 imposes inconsistent and arbitrary standards on interstate commerce because it authorizes private enforcers to prosecute cases "in the public interest", where the State of California has failed to adequately supervise the course of litigation and, further, has

failed to set uniform standards for injunctive relief for the industry. This allows private enforcers, such as Embry, to establish the level at which a warning is required on an ad hoc basis. This has resulted in scores of consent judgments with inconsistent phthalate allowances and differing requirements. Moreover, there is no feasible method by which a company can determine an acceptable exposure level before an action is brought. In brief, there is no way for companies such as Defendant to be free of Proposition 65 "private enforcer" litigation short of placing misleading cancer and reproductive toxicity warnings on all of their products. These misleading "warnings" and uncertain standards have a chilling impact on interstate commerce generally, on consumers outside of California, and on Defendant specifically.

### FIFTH AFFIRMATIVE DEFENSE

(No Knowing and Intentional Exposure – 27 CCR 25900(a))

24. Defendant alleges that the claims in the FAC are barred by 27 CCR 25900(a), which provides that there is "no knowing and intentional exposure" as a matter of law, where the Defendant's tests of the products conducted within one year of filing of the Complaint demonstrate that the chemical at issue was not detected. Here, Defendant has met the requirements put forth in 27 CCR25900(a).

### SIXTH AFFIRMATIVE DEFENSE

(Plaintiff Not Entitled to Extraterritorial Relief)

25. To the extent Plaintiff seeks relief beyond the State of California, Defendant alleges that Plaintiff's request for remedies on behalf of persons outside of the State of California is beyond the jurisdiction of this Court. In addition, Plaintiff cannot seek to impose Proposition 65 compliance on conduct occurring outside of California.

### SEVENTH AFFIRMATIVE DEFENSE

(Failure to Warn by Third Party)

Defendant alleges that the claims in the FAC are barred to the extent they are based on a failure to provide a warning, as such failure or omission was on the part of persons and entities other than Defendant and said failure or omission was entirely unknown to Defendant. The decisions of a third party, such as other distributors, or online retailers, to avail themselves of the California market

and not provide warnings to California consumers, if they chose to sell to such individuals, are not chargeable to Defendant.

**EIGHTH AFFIRMATIVE DEFENSE**

(Freedom of Expression)

26. Defendant alleges that the application of Proposition 65 and its implementing regulations to Defendant's products violates Defendant's right to freedom of expression as guaranteed by the First Amendment to the U.S. Constitution, applied to the states by and through the Fourteenth Amendment, and also as guaranteed by the California Constitution, Article I, Section 2(a). Specifically, compelling Defendant to place warning labels and/or internet statements as set forth in the Propositions 65 regulations, 27 California Code of Regulations 25600, et. seq., including but not limited use of the signal word "WARNING," require Defendant to overstate risk, cause consumer confusion, and untruthfully disparage its products.

27. Defendant further alleges that where the chemical at issue, DEHP, has been placed on the Proposition 65 list based on animal studies, that compelling warnings with regard to human exposures forces Defendant to make misleading statements which are scientifically controversial and thus, violates Defendant's First Amendment rights. See *Nat'l Inst. of Family & Life Advocates v. Becerra* 138 S. Ct. 2361, 2372 (2018).

**NINTH AFFIRMATIVE DEFENSE**

(Void for Vagueness)

28. Defendant alleges that Proposition 65, California Health and Safety Code Sections 25249.5, et seq., and its implementing regulations are unconstitutionally vague. Proposition 65 impermissibly delegates to the judicial branch the task of developing and quantifying the applicable standards as well as determining whether such standard was violated. As applied in this case, the disparate standards set by consent judgments make it impossible for Defendant to know before the Court's determination whether a warning is mandated or not, and, as such, Proposition 65 violates Defendant's due process and equal protection rights under the Fifth and Fourteenth Amendments to the U.S. Constitution and Article I, Section 7 to the California Constitution.

- 9 -
ANSWER TO FIRST AMENDED COMPLAINT

## TENTH AFFIRMATIVE DEFENSE

(Due Process Violation)

29. Defendant alleges that the claims asserted and remedies sought by Plaintiff would violate Defendant's due process rights under the California and United States Constitutions. Defendant alleges that the private enforcement provisions of California Health and Safety Code Section 25249.7(d) are unconstitutional both on their face and as applied to Plaintiff and its counsel because such provisions encroach upon the constitutional duty of the California Attorney General to ensure that the laws of the State are uniformly and adequately enforced and thus infringe upon the executive power in violation of the separation of powers doctrine of Article III, Section 3 of the California Constitution.

30. In addition, Proposition 65 on its face violates due process and the separation of powers because the statute improperly shifts the decision on what constitutes an appropriate and quantified exposure level from the legislative and/or executive branch to the judiciary. California Health and Safety Code Section 25249.10(c) and its implementing regulations do not set forth an objective quantitative standard for a determination but require the court to make the determination of the standard and "safe" exposure as applied to each product after trial.

31. Thus, both facially and as applied, the Proposition 65 statutory scheme violates the separation of powers and denies Defendant due process as a matter of law.

## ELEVENTH AFFIRMATIVE DEFENSE

(Equal Protection)

32. Defendant alleges that Proposition 65 and its implementing regulations violate Defendant's right to equal protection of the laws of the State of California and the United States because, among other things, various consent judgments entered by the court as required by Proposition 65 and its implementing regulations: (1) fail to establish clear, reasonable, quantified, and certain standards; (2) authorizes enforcers to initiate enforcement at any detectible level of listed chemicals; and (3) impermissibly shifts the burden of proof to the defendant to both establish and quantify the applicable Proposition 65 standard as well as to prove that their products do not exceed the court's determination of such quantified standard. Moreover, because phthalate levels in

- 10 -
ANSWER TO FIRST AMENDED COMPLAINT

products are only established by consent judgments or at trials, these standards are disparate, inconsistent, and unequally applied to various members in the same industry.

### TWELFTH AFFIRMATIVE DEFENSE

(Certificate of Merit)

33. Defendant alleges that, to the extent that a cause of action in the FAC is based upon Health and Safety Code §§ 25249.6, *et seq.*, Plaintiff is barred from proceeding with the cause of action because Plaintiff has failed to comply with the procedural requirements of that section, including, but not limited to, the requirement of Health and Safety Code § 24249.7 that Plaintiff consult with appropriate experts, consider affirmative defenses available to Defendant, and submit a valid certificate of merit with the Attorney General prior to filing a complaint. On information and belief, the information relayed by Plaintiff during the prefiling period show that the case was without merit.

### THIRTEENTH AFFIRMATIVE DEFENSE

(Unreliable Science)

34. The exposure limits and science and methodology underlying the warning requirements alleged in the FAC were and continue to be scientifically untrustworthy and unreliable. (See *Baxter v. Denton* (2002) 120 Cal.App.4th 333 [holding that chemicals may be Proposition 65 listed based on animal data, but that this is not dispositive of adverse effect in humans].)

### FOURTEENTH AFFIRMATIVE DEFENSE

(Federal Preemption)

35. Defendant alleges that the FAC, and each claim for relief therein, is barred by the Supremacy Clause of the United States Constitution.

### FIFTEENTH AFFIRMATIVE DEFENSE

(Not a Human Carcinogen)

27. Defendant alleges that any exposure to DEHP, does not require a warning for cancer, because DEHP was solely listed on the bases of animal test data, which failed to show that the "mechanism of action" in the test animals causes cancer in human beings. Pursuant to the ruling in *Baxter v Denton* (2004) 120 Cal. App. 4th 333, DEHP is not a human carcinogen. The *Baxter* Court

ANSWER TO FIRST AMENDED COMPLAINT

further held that if the scientific studies and data on which a listing is based fail to show that the chemical will cause cancer in humans, then the chemical is not a human carcinogen and does not pose a "significant risk" to humans under Proposition 65. (*Id*. at 353, 371.)

### SIXTEENTH AFFIRMATIVE DEFENSE

(Failure to Join Necessary and/or Indispensable Parties)

28. Defendant alleges that Plaintiff's FAC fails to name or join all necessary parties pursuant to Code of Civil Procedure sections 389 and 430.10(d).

### SEVENTEENTH AFFIRMATIVE DEFENSE

(Attorneys' Fees Barred)

29. Defendant alleges that Plaintiff is barred from any recovery of attorneys' fees because Plaintiff has failed to meet the requirements of CCP Section 1021.5, including but not limited to providing a good faith settlement offer to Defendant prior to filing suit.

### EIGHTEENTH AFFIRMATIVE DEFENSE

(Not Justiciable – Litigated for Private Interests)

30. Plaintiff is not proceeding only "in the public interest," as required by California Health & Safety Code § 25249.6. (*See Consumer Advocacy Group v. ExxonMobil Corp.* (2008) 168 Cal.App.4th 675, 692-93). Accordingly, this private enforcer action is not justifiable, among other reasons, because Defendant: (1) is not required to provide warnings under Proposition 65, pursuant to the data provided by Plaintiff; (2) upon information and belief, Plaintiff's counsel are pursuing this action under a contingent fee basis, which gives them a financial stake in the matter as well as control of the litigation; and (3) Plaintiff and its counsel are litigating not to enforce Proposition 65, but for personal gain. To maximize their fee potential and to pressure Defendants, Plaintiff and its counsel, filed an enforcement action against the product retailer, Ross, failing to engage in pre-suit settlement discussions with Enchanté. Instead Plaintiff and its counsel sent abusive and unprofessional communication to opposing counsel. Plaintiff was well aware that Ross was not the proper defendant, and was entitled to the so-called "retailer defense" – 27 CCR §25600.2(e) – but sued only Ross, intentionally excluding Enchanté in the lawsuit. This not only unnecessarily extended the length and

cost of the litigation, but ultimately required Enchanté to expend money and time to intervene to defend and indemnify Ross.

31. Plaintiff and its counsel's improper actions in this case are not unique, but part of a plan and practice to sue retailers, increasing costs and leveraging unreasonably high monetary settlements from manufacturers and importer, like Enchanté, who have not been sued.

32. Plaintiff and its counsel also abuse private enforcer status by failing to present *all* settlements to the court as Consent Judgments as required by H&S 25249.7(f)(4): Plaintiff avoids this obligation by entering into private, out-of-court settlement with the manufacturer (who Plaintiff has intentionally not sued), and then dismissing the claim it filed against the retailer. This conduct violates the letter and spirit of Proposition 65 private enforcement provisions. It also gives Plaintiff more leverage to extort higher out-of-court payments and other settlement terms, which never are evaluated by the court or found to be "in the public interest."

33. Plaintiff and its counsel are not adhering to the ethical standards that apply when a private entity seeks to vindicate "public interests." (*See Clancy v. Superior Court* (1985) 39 Cal. 3d 740, 748-53 (Supreme Court holding that where a private law firm has a personal stake in the outcome of the case, the interests of justice and larger public interests may be compromised, and thus, contingent fees arrangements are banned.)). Although the California Supreme Court in *County of Santa Clara v. Atlantic Richfield Company* (2006) 137 Cal. App. 4th 292 qualified the absolute ban on contingent fee agreements by allowing them where a public attorney is managing all phases of the litigation *and making all decisions*, this does not occur in a Proposition 65 case such as this one.

34. Under the facts of this case, including Plaintiff and its counsel's conduct to date, Plaintiff does not meet the prerequisite requirement for private enforcement "in the public interest" under the applicable statutes and regulations. Because Plaintiff and its counsel have filed and pursued this action for personal interests, violated California standards of professional ethics, circumvented Proposition 65 statutory and regulatory requirements governing private enforcement, Defendant is entitled to reimbursement from Plaintiff and its counsel of its reasonable fees and costs to defend this lawsuit pursuant to CCP Sections 128.7, and 128.5. Defendant is also acting in the public interest for bringing Plaintiff and its counsel's improper private enforcement conduct in this and other cases to

ANSWER TO FIRST AMENDED COMPLAINT

the attention of the court, and thus, is entitled to reimbursement of fees and costs pursuant to CCP §1021.5.

### NINETEENTH AFFIRMATIVE DEFENSE

(Bad Faith Prosecution – Abuse of Private Enforcer Status)

35. Defendant contends that Plaintiff and its counsel are pursuing this action in bad faith. Among other things, Plaintiff's counsel willfully ignored relevant exculpatory evidence, ignored the conclusion of the California Court of Appeals that DEHP poses no significant risk of cancer in humans in *Baxter Healthcare Corp. v. Denton* (2004) 120 Cal.App.4th 333, and failed to negotiate a settlement in good faith. Rather than dismissing the case, or agreeing to a reasonable settlement offer, Plaintiff and its counsel have filed this action without legal justification for doing so, in violation of CCP §§128.7, 128.5 and their duty under Proposition 65 to litigate only "in the public interest."

36. Plaintiff and its counsel are therefore pursuing this action in bad faith and in disregard to the California Rules of Professional Conduct (for example, California Business & Professions Code §6068(c); California Rules of Professional Conduct Rule 3-200). Such bad faith prosecution is relevant to and dispositive of Plaintiff and its counsel's lack of standing to bring this action "in the public interest," and conduct that rises to the level of triggering sanctions, including terminating sanctions, pursuant to CCP §§128.5, 128.7, and 2023.030. (See also *Lang v. Hochman* (2000) 77 Cal.App.4th 1225, 1246 (reviewing cases in which trial courts imposed terminating sanctions "after considering the totality of the circumstances.")).

### TWENTIETH AFFIRMATIVE DEFENSE

(Reservation of Additional Affirmative Defenses)

37. Defendant alleges that it has not knowingly or voluntarily waived any applicable affirmative defenses and hereby gives notice that it intends to rely on such other and further defenses as may become available or appear during the discovery proceedings in this case and hereby reserves the right to amend its answer to assert any such defense.

### PRAYER FOR RELIEF

WHEREFORE, Defendant prays as follows:

1. That this Court deny every item of relief requested in the FAC;

2. That the FAC and each cause of action be dismissed against Defendant with prejudice;

3. That judgment on the FAC be entered in favor of Defendant;

4. That Defendant be awarded its costs and fees in this action; and

5. That Defendant be awarded such other and further relief as this Court may deem proper.

DATED: May 2, 2022                    STEPTOE & JOHNSON LLP

By:_____
   Carol R. Brophy
   Dennis E. Raglin
   Attorneys for Defendant
   ENCHANTE ACCESSORIES, INC.

# PROOF OF SERVICE

I am a resident of, or employed in, San Francisco, California. I am over the age of 18 and not a party to this action. My business address is Steptoe & Johnson LLP, 1 Market Street, Spear Tower, Suite 3900, San Francisco, California 94105. On **May 2, 2022**, I served the following:

- **DEFENDANT ENCHANTE ACCESSORIES, INC.'S ANSWER TO FIRST AMENDED COMPLAINT**

☒ ELECTRONIC MAIL - by causing the document(s) listed above to be sent via E-MAIL to the counsel of record on this case. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

**Counsel for Plaintiff CONSUMER ADVOCACY GROUP, INC.:**
Reuben Yeroushalmi, Esq.
Shannon E. Royster, Esq.
Yeroushalmi & Yeroushalmi
9100 Wilshire Blvd. Suite 240W
Beverly Hills, CA 90212-3497
reuben@yeroushalmi.com
shannon@yeroushalmi.com
Phone: 310-623-1926 | Fax: 310-623-1930

**Counsel for Defendants Ross Stores, Inc. dba DD's Discounts, Ross Dress For Less, Inc., Ross Procurement, Inc., and Perfect Image, LLC:**
Jeffrey B. Margulies, Esq.
Eva Yang, Esq.
Norton Rose Fulbright US LLP
555 South Flower Street, 41st Floor
Los Angeles, CA 90071
jeff.margulies@nortonrosefulbright.com;
eva.yang@nortonrosefulbright.com

I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct. Executed on **May 2, 2022** at San Francisco, California.

*/s/ Sarah Bergmueller*
Sarah Bergmueller